Alright, we're looking at another 4.30 Business Now session. The Honorable Justice Martina E. Lampkin is presiding. Good morning. Good morning everyone. You can have a seat. People v. Johnson Oh, I'm sorry. I see one of my old clerks out in the audience. Oh my God. That's nice. It's been so long. It's so lovely to see you. I heard. It looks like you can call the first case. People v. Johnson Okay, I want the lawyers to step up please for a moment. And state your name please loudly for the record. That's a recording device. It won't amplify your voice. Please tell us your name and who you represent. Benjamin Wimmer of the State Appellate Defender's Office, representing the defendant, Jason Johnson. Thank you. Erin Slater, representing the people of the state of Illinois. Thank you both so much. You both have 15 minutes and understand that we have read the briefs and records. You can argue your case the way that you want to. We may interrupt you to ask you some questions. You both, as I said, have 15 minutes. So for the appellate, how much time do you want to reserve counsel? Two for rebuttal if that's okay. And whenever you guys are ready, you can proceed, counsel. May it please the court? This court should reverse the trial court's second stage dismissal of Mr. Johnson's post-conviction petition because the petition substantially states one of two alternative claims, either that trial counsel was ineffective in failing to introduce evidence, or that newly discovered evidence that Detectives David Fittick and Anthony Mislanka have a pattern or practice of coercing statements from criminal suspects in other cases would corroborate Mr. Johnson's testimony that the two, and especially Detective Fittick, coerced his own statements implicating himself in the charged New Year's 2003 murders in this case. Now the dispute between Mr. Johnson and the state in this appeal essentially concerns how material this evidence presented with his post-conviction petition is to his claim that his statement was coerced. It's undisputed that if it's material enough, it's going to substantially state either one of these two claims. If the evidence could have been discovered before the end of trial, and there's a reasonable probability it would produce a different outcome, that's ineffective assistance of counsel under Patterson from 2014. Is there a difference here between materiality and relevance in your opinion? For example, you know, how do we define what is too remote in time? How do we define factual similarity, those types of issues? Well, materiality and relevance are related. Materiality is sort of a sufficient showing of relevance. And admittedly, it's above, beyond just what would be required to admit something at trial under Rule 402 and 401. The standards are for an ineffective assistance of counsel claim, there needs to be a reasonable probability of a different outcome. If the evidence is newly discovered, couldn't have been discovered before the end of trial, then you need to show that the evidence would probably change the results on retrial. That becomes the standard of materiality that needs to be shown. But as you know, these are closely related. As the Illinois Supreme Court has repeatedly said, most recently in Jackson from 2021, it's ultimately a question of how relevant and how probative is this evidence to the claim for suppression of evidence. And as they said in Jackson, ultimately this is a determination that needs to be made on the unique facts of each case. So to begin going into the facts here, it's undisputed that Mr. Johnson was with police at various locations for about four days, from February 6th through February 9th of 2023, before the final version, the court-reported version, of the statement that was introduced against him at trial was completed. Do you see any factual similarities between, you know, the Turk reports that were not able to be used at the suppression, motion to suppress hearing and what happened to your client, what your client was saying happened? Right. Yes. I mean, let's go first to, you know, the evidence about Detective Fittick. Because, well, according to Jason's testimony, Ms. Funke kind of sets the stage. According to his testimony, Fittick is the one that actually coerces his statements. He's the person that's performing the interrogation that, you know, leads to it. The most important evidence here that's offered with the petition regarding Fittick is that regarding Clinton Dix, his allegations from that in September 2002, Fittick and other detectives drove him to a vacant lot. And in Fittick's presence, another one of the detectives physically abused him and threatened to kill him. And once he agreed to make a statement, Fittick provided him with heroin. This is close in time to the allegations in this case, about a year prior. It was probably available by the time of even the hearing through, you know, reasonable efforts by trial counsel. We know that there was a complaint register created about this in 2006. Is that factually similar to what Mr. Johnson is saying happened to him? It's actually similar because it shows that Fittick is actively participating in an attempt to basically extort a confession from somebody through the use of, you know, physical force and threats to kill him. And there's similar testimony in this case. Johnson states that there's a threat to kill him implicitly, admittedly, when he says that Detective Fittick briefly flashes him his ankle bolster and when he flinches says, don't flinch, I could shoot you. And, of course, also there's the testimony from Johnson that Fittick used force against him, that, you know, slapped him, choked him, at one point kicked him in the back after being asked to assume the position of a baby, dead baby from the crime scene photograph. The difference in terms of, you know, the precise nature of the physical force isn't critical in a case like this. And I think that's set forth in, you know, the Cannon case from 1997, cited here, that trying to distinguish and, you know, draw fine points between, you know, oh, in this case somebody was punched in the face and the other person was kicked in the leg or, you know, tapped in the nightstick, doesn't make any sort of, you know, ultimately this goes to relevance. And trying to draw distinctions on that basis just doesn't make sense. That's two parts of the body. Yeah. And in the prior incident, he stood by silent and did not stop his partner, I guess, from doing the beating, right? In the case that you said was most close in time. This is true. But I think saying just that he didn't stop him slightly understates Fiddick's involvement here. It's not a situation where something suddenly sort of burst out in front of him and he did nothing to stop it. That would be somewhat closer to the allegations in Abdul Muhammad, that Abdul Muhammad made from April 2002, I'm sorry, 2000. Even then, it's a little bit more subjective than that. Muhammad says that his partner slammed down documents on the table in front of him and then asked Fiddick to leave, which implicitly is sort of, you know, anybody who can sort of see that's ramping up the tension in the room. It's kind of an implicit threat. In the Dixon case, however, Dixon testifies, you know, this isn't something that happened spontaneously. These three detectives specifically take him to a remote location and Fiddick has heroin to give him. After he, yeah, so while obviously Dixon can't testify directly to Fiddick's state of mind, what he's saying happened indicates that there's a plan here and Fiddick has signed up for it before he's gone along. That tends to show that, you know, he is willing to use physical force to, you know, extract confessions, and that is what, you know, Mr. Johnson testified happened in this case. I've looked for cases specifically addressing as part of a holding some sort of distinction between merely standing by and watching, you know, as opposed to, you know, doing violence oneself. I didn't find anything published addressing that in terms of the holding itself, but the Illinois Supreme Court in Orange, when saying that the showing made in that case wasn't sufficient to substantially state a claim, noted that the petitioner, the defendant in that case, wasn't able to say that the persons who he claimed had tortured him in that case had either been accused before of torturing somebody or of failing to stop, being aware of and failing to stop torture. So you're analogizing that failing to stop, the Supreme Court would also say, is part of the plan of coercion. Yes, and it's not, the argument isn't just based on that line from Orange, though. It's based on common sense, which is going back again to the fact that ultimately these are questions of relevance and how probative something is. If a person's, I mean, it goes back to accountability as well. If a person's willing to go into a situation knowing that they have a plan that one of them is going to use violence and the other is going to, you know, supervise or play another role. Good cop, bad cop. Right, good cop, bad cop. I mean, if there was some sort of additional evidence that, you know, you know, physically, like was physically unable to portray the, to play the bad cop in another situation, that might be relevant. But we don't have anything like that here. What we have is allegations, testimony from Johnson that Finick, who admits to being alone with him, used physical force during this interrogation to agree to get him to make a statement and, you know, also testified, showed him, you know, in order to produce this statement, which was available at the time because this was going on one month after the actual murders themselves, while Manuel Phillips was on, you know, his rampage in the subject of a manhunt. Briefly, to just address the allegations, his testimony about Detective Maslanka, again, you know, it's pointed out, you know, the distinction being drawn here in the stage brief is between just slapping somebody as opposed to using far more severe force. The fact that he has a history of using, there's evidence that Maslanka has a history of using far more severe force, strongly corroborates that he would be willing to use comparatively minor force when, you know, telling him, telling Mr. Johnson to reveal Phillips' whereabouts. And while this, you know, as I said before, isn't the sort of the key moment that coerces Mr. Johnson's statement in this case, it is sort of setting the stage for it. The first thing he encounters, according to Johnson's testimony during the first day, is a police officer slapping him while telling him to tell him the truth, and nothing happens. Nobody stops him. It's not super severe at that point, but it's coloring how he's going to perceive events later and how he's going to react to them. In light of this, especially given the fact that this is at the second stage, which the trial court isn't supposed to be drawing. No judging. Yeah, no judging credibility. This is enough to substantially state one of these two claims, and evidentiary hearing should be held in this case. I'm sorry, counsel, so are you arguing that the judge did make credibility assessments because our standard of review is abuse of discretion, and we have to say the judge abused his discretion. Are you saying that he was evaluating the weight of the evidence and self-making credibility assessments? There's two things that could happen here. Given the actual statements that the trial court made, it's a little bit difficult to get in precisely to the rationale that's involved. What I can say is that given the, because this is de novo review, second stage dismissal, there has to be either an improper credibility determination or improper application of the law regarding what is sufficient to set forth a, to substantially state a claim of either ineffective assistance of counsel or newly discovered evidence based on this information. Review is de novo. So regardless of whether or not there were some sort of private determinations, either way, on a de novo review, this is where an evidentiary hearing should have been held. So unless the court has any further questions, is there any time? I'm so used to calling people candidates. There are no further questions. Thank you. Thank you. May it please the Court. Defendant failed to make a substantial showing that his trial attorney's representation during the suppression proceedings was constitutionally deficient. Although he argues that counsel should have sought to introduce evidence that Detectives Mislanka and Vidyak had a pattern and practice of abusive behavior to bolster his own claims of abuse, the evidence on which he relies largely depicts stale claims of abuse that are dissimilar to his own claims. How do we define what is too remote in time? So there's no specific time limit as to whether a prior claim is too remote. However, courts have found that claims four years removed were too attenuated to be relevant. That was in People v. Patterson. People v. Hobley, they found a claim that was three years removed was too attenuated to be relevant. But what if there were repeated claims over a protracted period of time, not just, for example, one event three years before or one event four years before? Does that change the analysis? Sure. So Jackson addressed the fact that a span of abuse that takes place over a couple of years can be relevant. However, all of the abuse at issue, and we're talking about a Detective Mislanka here, that all occurred about almost one decade to two decades before defendant alleged that he incurred abuse in 2003. Before talking about the specific pattern and practice evidence at issue, I do think it's important to note two flaws or shortcomings with respect to the defendant's abuse allegations. So with respect to Detective Mislanka, defendant's claims lack consistency. He was afforded the opportunity to testify about his treatment at the hands of police at two different pretrial hearings. And at the first one, he said that after police forcefully entered his home, an unnamed detective smacked his face and threatened him. He further testified that the detective never touched him again after that. Now at the second hearing, now he identifies Mislanka as the officer who smacked his face and threatened him. And then he goes on to say this time that Mislanka continued his abuse at Area 2 and continued to put his hands on him and smacked him several more times. So consistency of the defendant's claims of abuse is one factor to consider. And the lack of consistency here with respect to the defendant's claims would diminish the relevance of any of the pattern and practice evidence. But doesn't consistency go to credibility, which is not to be utilized at second stage? So second stage proceedings don't, you're not allowed to make credibility determinations. But when it comes to pattern and practice evidence and the relevance of prior claims of abuse, the consistency of the defendant's claims is an important factor that is considered. In addition to the lack of consistency... But isn't there a case that says... Sure, so Harrison references the necessity or the importance of a defendant's consistent allegations of abuse. I think that principle is recited in Jackson and in a slew of other appellate court decisions. So if he testifies to one thing at one hearing and it's contradicted by his own testimony, the trial judge can consider that in determining the relevance. I believe that that's a factor that can be considered when you're reviewing... Yes, the consistency or lack thereof of a defendant's allegations can't just be ignored at this stage. But inconsistency typically, for example, when I was a trial judge, inconsistency would lead me to credibility determinations if the person was inconsistent at different times with regard to testimony about a particular event. So to me, they're very similar. One feeds into the other. But according to you, this is allowed at this stage, even though we're not supposed to consider credibility determinations at the second stage. So you're not making a credibility determination, but you're looking at it as sort of a holistic view. So when you're talking about the different claims of abuse, you're looking at when did the prior claims occur? Are they sufficiently similar? Has the defendant consistently made an allegation? That's just simply a factor that's recited over and over and over again in this case law. Then another, I would say, another flaw with respect to defendant's allegations against Mislanka is that his testimony is also undercut by two different detectives. So Sergeant Brannigan testified that Mislanka was never actually there for the forcible entry into defendant's stepfather's home. And Detective Lombard actually said that he was the one who was with defendant by the couch where the slap initially occurred, and not Detective Mislanka. But even if defendant's claims of abuse were consistent and not undercut by the testimony of his officers, it is unlikely that the pattern and practice evidence at issue would have been found relevant and admissible because they depict stale claims of abuse that do not sufficiently align with defendant's own claims. So the first piece of evidence that defendant points to is the 2006 report of the special state's attorney. So that report investigated claims of abuse made by Alfonso Canex. I'm sorry, I didn't mean to interrupt you. No, go ahead. I should have asked it before you got right into it. But would you agree with the trial court's ruling that the attorney representing the defendant could have gotten most of this information before the hearing? Yes. The bulk of the evidence that defendant is pointing to now, excuse me, was available at the time of the hearing, which is why the defendant is claiming that his attorney was ineffective. So there were two pieces of evidence here that were not available at the time of the suppression hearing. So that would be the transcript hearing in which Mislanka invoked his Fifth Amendment right into questioning about his role in the abuse of suspects. So that hearing occurred about one month after the suppression hearing. So obviously, counsel couldn't have been ineffective for introducing that. And the other would be... But it was before judgment was issued, I think. It was. It was. And then the other one would be the Turk report that investigated Adul Mohammad's claims. So that was actually issued in 2018. So long after the 2009 suppression hearing. But it's the people's position that even if they were available, they lacked relevancy. So again, the 2006 report of a special state's attorney, that existed prior to the hearing. That investigated claims of abuse that occurred in 1985. So that's about two decades before... I thought it was 85 to 90, like 99 or something. So Panex's specific allegation was 85. So that was about two decades before defendant's 2003 claim. And Panex's claim involved a beating so severe that it caused him to defecate in his pants. Which is different than what defendant alleges, which is a few slaps to the face. There's also a Turk report that investigated claims of abuse by Tony Anderson. Again, that claim occurred in 1990. So that was about 13 years before defendant alleged that he was abused. And again, that allegation of abuse involved striking someone with a nightstick to his backs and thighs. And defendant never alleged that he was struck with a weapon or any sort of instrument of any kind. The two other decisions that defendant cites in support of his pattern and practice evidence against Mislanka. Include two judicial decisions that reference him. So the first would be People v. Clemen. This is a case in which Mislanka was simply one of many detectives involved in the investigation. And no specific allegations of abuse were made against him. So it's the People's position that that decision does not support defendant's allegation that Mislanka had a pattern and practice of abuse. Now People v. Clemen involved two allegations made by claimants about abuse that occurred in 1988. And 1996. So one alleged that Mislanka struck him with a car. And the other alleged that Mislanka struck him with a gun. So again, that abuse occurs long before defendant alleged he was abused in 2003. And I think hitting someone with a car and a gun is categorically different than striking someone with an open hand. Essentially because all the pattern and practice evidence pertaining to Mislanka involve claims of abuse that lack temporal proximity. And qualitative similarity. The exhibits lack relevance and it is unlikely that the trial court would have admitted it. Or that if admitted, the exhibits would have changed the outcome of the suppression hearing or the defendant's trial. The same conclusion is warranted for the pattern and practice evidence pertaining to Detective Fidjek. Again, just not to belabor the point, but defendant's claims against Fidjek lack consistency. At the first hearing, defendant never described any sort of abuse perpetrated on him. If there was a motion to quash arrest, they wouldn't be discussing what happened at the station generally. At least that's my experience. The defendant did testify about his treatment at the hands of police at his stepfather's home and at the station. So he specifically said he addressed Mislanka. He never talked about Detective Fidjek at the first hearing. But they don't get into the statements in the motion to quash arrest. The statements were taken two days after he was arrested, weren't they? I think he was arrested. He was arrested on the 6th and he gave a statement on the 8th and 9th. We'll say he's not arrested because the trial judge said he's not arrested. Right, right. Okay, so I think he's taken in February 6th and gives his first statement February 8th and 9th. Or he gives inculpatory statements on the 8th and 9th. And they didn't get that far in the motion to quash arrest. So they got to the point where they're asking about how the defendant was brought in, who he talked to, the fact that he did give statements. And the defendant, despite talking about the fact that Mislanka, an unnamed detective, reportedly smacked him, brought him to the station, never mentions the fact that someone actually perpetrated even worse abuse that he talks about in the second hearing. Was he specifically asked that question? No. He wasn't asked if Detective Fidjek abused you. He was not asked that question. And was he ever asked what did you say to the detectives after the arrest while you were in the station at the motion to quash stage? So they didn't ask the defendant when he was arrested. That was the whole issue about when did that arrest actually occur. So they never really got around. It wasn't relevant to the motion to quash to ask the defendant about additional statements that he may have given at the station, right? Well, so he was seeking to quash his arrest and suppress evidence, including the statements. So the statements can't really be divorced from that whole proceeding. Isn't a motion to suppress statements, though? The motion to quash hearing, except in this case where the trial judge took judicial notice of the motion to quash, but then they had additional testimony about the statements themselves. Right. So it involved different evidence but related inquiries, essentially. Even if you're not persuaded that it's okay, I'll let it go. The pattern of practice at issue with respect to Fidyik does not support the defendant's claim of abuse. So, again, he relies on the Mohammed Turk report. And the report never included any specific allegations by Mohammed that Fidyik physically abused him. He was simply one of many officers involved in the investigation. The report did note that two other claimants had alleged that Fidyik perpetrated abuse. So one, as referenced by counsel, was Clinton Dixon. So he alleged that in 2002, Detective Fidyik and several other officers drove him to a vacant lot and that Detective Fidyik was present while another officer beat him, put a gun to his head, and threatened to kill him. I would argue that that claim differs, although it's temporally similar, it differs significantly from defendant's claim. There's no allegation that defendant was brought to a private location and beaten. As for the second complaint mentioned in the Mohammed Turk report, the second complainant alleged that he was beaten. The exact type of beating was not specified, nor was the exact timing of that beating specified. So given these deficiencies, people would argue that the Mohammed Turk report lacks relevancy. I'll take just a minute to address defendant's related claim. He essentially seeks to rely on the pattern of practice evidence to reopen or reassess the suppression ruling. And he acknowledges that res judicata bars the claim and invokes fundamental fairness. That exception does not apply here. Even if all of the evidence could be construed as newly discovered, they, as previously discussed, they largely depict stale claims of abuse that do not sufficiently align with defendant's specific claims. As a result, the evidence is not material or of such a conclusive factor that its admissibility would probably change the result of the suppression proceedings or the trial. Counsel, do you agree that without the inculpatory statements from the defendant, there would have been insufficient evidence to either charge or convict Mr. Johnson? Because there was no evidence. There was no DNA. There's no fingerprints. There's nothing, right? It's just they got him on his statements and his friendship with Mr. Amin. So obviously, like, the defendant's statements are very important. But I wouldn't say that there's no requirement that there be DNA evidence or physical evidence required to convict. Or the fact that, go ahead. I don't think that's what the judge said at all. She's asking you that if you don't have the defendant's statement, you don't have a case. You couldn't charge him, and he certainly could not have, well, you couldn't charge him, he couldn't be convicted. Without his statement, you couldn't convict him. Do you agree with that? I don't necessarily agree with that, no. I agree that the statement itself was obviously a very important piece of evidence. But it's not the only evidence, I would argue. Okay. I'm not going to ask you what it is because I've read the record, and I'm just trying to think what other evidence would be sufficient to bring the charge against, other than he knew the killer, and the killer told him, I killed people, and I'm going to kill more people. And he knew the locations of the weapons, and he knew that he was going to kill his father, and he knew that he was going to kill, he had other killers. He killed Ms. Sherrod, and he killed Leon, and a whole other bunch of disciples. If you tell me all that stuff, I can't be held responsible for it just because I know it. And that's the point, I think. No, but there are phone records also showing that they were in constant contact. They were friends of some type. Very close friends. That is the specific person that anyone talks to, whether that's defendant's own family or Emanuel's own family, that they said, well, you should go talk to the defendant. I mean, that's how close they were. But that's not enough just because you're close with somebody. No, I agree, but I'm just saying that statement itself is not the only evidence that was discussed at trial. I agree that the case is weaker without the statement, as any case would be. So unless there are any further questions, the people respectfully request the court to affirm the trial court's second stage dismissal of the post-conviction petition. Thank you. Goodbye. I'm going to please the court if I can make just two quick points. First is on the issue of whether or not there's an inconsistency in Mr. Johnson's testimony by virtue of the fact that he did not mention all of the allegations concerning Ms. Lonka and all of the ‑‑ any of Ms. Treven, but the motion to coerce arrest. I mean, it's an interesting argument that maybe these two things should have been litigated together, but it's clear that that was not how they proceeded in the trial court here. The trial court specifically stated after the end of the attenuation hearing that he had not found that the statements were made voluntarily, and that was still an open question. As a matter of fact, when ‑‑ during the motion to coerce arrest, when defense counsel first asked Mr. Johnson about getting slapped by Ms. Lonka, it drew an objection at the time. And, you know, it wasn't, you know, thoroughly litigated what went on afterwards in the police statement. The question actually asked by the prosecutor was not, you know, detailed questions about digging away at his hands. He said, did he ever actually bust your shit? Which was what he threatened to do at the time. So there isn't actually any significant inconsistency in the testimony that's been given at the first and second hearing. The inconsistency is that he didn't say that Ms. Lonka did certain things at the first hearing. He did say Ms. Lonka did more things at the second hearing. And he didn't identify Ms. Lonka at the first hearing. He didn't ‑‑ I'm assuming ‑‑ Is that an inconsistency? Well, I mean, it's definitely, like, testimony is given on the subject later. It's not given first. But because he's not being asked about it in the first hearing, and because the first hearing is going to a different subject, it's not, you know, an inconsistency calling into question his credibility. Definitely not enough ‑‑ I'm sorry. Yeah. Yeah. My recollection is that he said the first, at the motion, first I was a trial judge for 20 years. You've got a motion to suppress evidence as one document, and you've got a separate document as a motion to suppress statement. So even though the first one was titled antispress statements, you really didn't go into that until after the court made a determination on whether there was probable cause to arrest you or not. But at that first hearing, he said whoever slapped him and threw him on the couch and threatened to bust his stuff up didn't do anything to him at the station. That's the inconsistency that I'm saying, because anything that same person who slapped him and threw him on the couch also did something to him at the station. That was the inconsistency. And if my recollection may be wrong, I will certainly look at it. I mean, without the record in front of me, I don't have it. If that would be at least a inconsistency, but not the sort of inconsistency that would merit saying that, you know, no person could believe this person at a second stage, you know, motion to dismiss where you aren't allowed to make credibility hearings. There is a point at which an inconsistency can be so great that, you know, nobody could possibly believe this person. I spent a bunch of time just now trying to find the exact case. I know there's a case where a defendant testified to trial. He didn't make a statement at all, and then later wanted to testify. Actually, I did make a statement, but it was coerced. The court held in that case that inconsistency is so great, you know, nobody could believe you. You're making it up. But here, an inconsistency about how many times the person, you know, slapped him who wasn't even actually the person who specifically coerced his eventual statement, it's comparatively minor inconsistency. It's not something that can be properly addressed on a motion to dismiss. The other point briefly I want to make concerning whether or not there would be enough evidence to convict or charge in the absence of the statements, I mean, there are groups made in the briefs that wouldn't. Just a brief reminder, there's actually a rule of law in Illinois under the Rice case from the Illinois Supreme Court. It's never the case that a physically tortured statement can be considered a harmless error. So regardless, it's relevant. Unless the court has any further questions, that's all I have. No. Thank you. And thank both sides for, I can't say an interesting case. It's a very sad case with a lot of people who have lost their lives. We will have a decision for you in due course, and we stand adjourned at this time.